No. 22-1969

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NATIONAL LABOR RELATIONS BOARD,

*Petitioner,*

v.

SIREN RETAIL CORPORATION d/b/a STARBUCKS,

*Respondent,*

And

WORKERS UNITED,

*Intervenor.*

On Appeal from the National Labor Relations Board

**BRIEF OF INTERVENOR WORKERS UNITED**

Dmitri Iglitzin, WSBA No. 17673
Ben Berger, WSBA No. 52909
BARNARD IGLITZIN & LAVITT, LLP
18 West Mercer Street, Suite 400
Seattle, WA 98119
Telephone: 206-257-6003
Fax: 206-378-4132
iglitzin@workerlaw.com
berger@workerlaw.com

**TABLE OF CONTENTS**

I. SUMMARY OF THE ARGUMENT ............................................................... 1

II. RESTATEMENT OF THE ISSUES PRESENTED ..................................... 2

III. STATEMENT OF JURISDICTION ............................................................ 2

IV. SUPPLEMENTAL STATEMENT OF THE CASE ..................................... 2

V. ARGUMENT ................................................................................................. 3

    A. Starbucks' quibble with the Regional Director's method of assessing the 14-day new case trend conflicts with *Aspirus*' directive that this metric focus on raw numbers and that NLRB regions be afforded flexibility in determining trends in these numbers. ........................................................... 3

    B. Starbucks was procedurally barred from using post-election objections to relitigate the same issue it raised in its pre-election objections. .................... 6

    C. Starbucks' refusal to bargain with Workers United based on a frivolous, twice-litigated objection to the Union's certification is consistent with its adjudged pattern of delay to avoid its statutory obligations. ......................... 7

VI. CONCLUSION ............................................................................................. 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aspirus Keweenaw*,
　370 NLRB No. 45 (2020) ..........................................................................*passim*

*Fruehauf Trailer Co.*,
　106 NLRB 182 (1953) .........................................................................................7

*Lakeside Non-Ferrous Metals, Inc. v. Hanover Ins. Co.*,
　172 F.3d 702 (9th Cir. 1999) ..............................................................................6

*Sitka Sound Seafoods, Inc.*,
　325 NLRB 685 (1998) .........................................................................................6

**Statutes**

NLRA Section 10(e), 29 U.S.C. § 160(e) ................................................................2

**Other Authorities**

*Starbucks Corp.*,
　03-CA-295470, 2023 WL 4363911 (Div. of Judges July 6, 2023) .....................8

*Starbucks Corp.*,
　04-CA-294636, 2023 WL 5140070 (Div. of Judges August 10,
　2023) ...................................................................................................................8

*Starbucks Corp.*,
　15-CA-290336, 2023 WL 3254440 (Div. of Judges May 4, 2023) ....................8

*Starbucks Corp.*,
　22-CA-305726, 2023 WL 4546259 (Div. of Judges July 14, 2023) ...................8

I.  **SUMMARY OF THE ARGUMENT**

In its response brief, Petitioner National Labor Relations Board (Board) comprehensively laid out the reasons why its petition to enforce its November 30, 2022, Decision and Order should be granted and Respondent Siren Retail Corp. d/b/a Starbucks (Starbucks)' objections to enforcement are meritless. Intervenor Workers United (Workers United) submits this brief to reinforce the Board's argument with three subsidiary points:

1. The Board's decision in *Aspirus Keweenaw*, 370 NLRB No. 45 (2020), supports the Regional Director's Decision and Direction of Election (DD&E) ordering a mail ballot election. Since *Aspirus* described the 14-day new case trend as a comparison of raw numbers reported on different dates, the Regional Director did not err by comparing the raw number of new COVID-19 cases reported 2 and 14 days before the DD&E issued. Nor did the Regional Director err by looking at only two dates for the sources of new cases, since an increase or decrease in new cases over 14 days can be determined with reference to only two points in time. Moreover, *Aspirus* gave regional directors discretion to select the dates that count for purposes of the 14-day case trend factor.

1

2. In addition to its regulations, Board precedents have rejected efforts to relitigate parties' pre-election objections through duplicative post-election challenges, as Starbucks seeks to do here.

3. The extraordinarily high standard for overturning a union election should be applied even more rigorously to Starbucks, where recent decisions by NLRB administrative law judges establish the company's practice of flouting its statutory duty to bargain in good faith. These cases confirm that Starbucks' refusal to bargain in the instant case is part of a systematic delay tactic, not a genuine dispute over the method of election or employee turnout.

## II. RESTATEMENT OF THE ISSUES PRESENTED

Workers United concurs with and joins in the Board's Statement of the Issues. (NLRB Br. 3).

## III. STATEMENT OF JURISDICTION

Workers United concurs with and joins in the Board's Statement of Jurisdiction. (NLRB Br. 1–3). For the reasons explained therein, this Court has jurisdiction over the Board's petition to enforce its November 30, 2022, Decision and Order under Section 10(e) of the NLRA, 29 U.S.C. § 160(e)).

## IV. SUPPLEMENTAL STATEMENT OF THE CASE

Workers United concurs with and joins in the Board's Statement of the Case. (NLRB Br. 4–13).

## V. ARGUMENT

### A. Starbucks' quibble with the Regional Director's method of assessing the 14-day new case trend conflicts with *Aspirus*' directive that this metric focus on raw numbers and that NLRB regions be afforded flexibility in determining trends in these numbers.

The Board has thoroughly refuted Starbucks' critiques of the Regional Director's reliance on and interpretation of the available Hopkins data to find that the 14-day COVID-19 case count was increasing as of the issuance of the DD&E. (NLRB Br. 23–33). While these points are more than sufficient to uphold the permissibility of ordering a mail ballot election, it is worth highlighting a few additional defects in Starbucks' reasoning.

First, Starbucks repeatedly takes the Regional Director to task for focusing on raw numbers of new COVID-19 cases, as opposed to "rolling averages," (Starbucks Br. 3, 9, 10, 12, 38), suggesting that this approach contravened *Aspirus*. The opposite is true. In *Aspirus*, the Board introduced two metrics a regional director could look to determine the "severity of the outbreak in the specific locality where the election will be conducted" and, in turn, the propriety of holding a mail ballot election: "the 14-day trend in the number of new confirmed Covid-19 cases in the county where the facility is located" and "the 14-day testing positivity rate in the county where the facility is located." *Aspirus*, 370 NLRB No. 45, slip op. at 5. On the face of the decision, the Board described the first alternative as a comparison of absolute "numbers" reported between at least two points over a 14-day period, not averages

3

deduced by comparing case numbers within that period to case numbers outside of it—which would be necessary to produce a rolling average. *Id.*

The Board's characterization of the second alternative reinforces that it meant for regional directors examining the first alternative to evaluate raw numbers. With respect to case positivity rate, *Aspirus* explained that "this statistic is based on the number of positive and total tests in the locality, *as opposed to raw numbers of confirmed cases*, and therefore is at least suggestive of transmission rates in the locality among people who have not been tested." *Id.* (emphasis added). In context, the italicized clause referred back to and contrasted with the preceding description of the 14-day case number trend, thus confirming that—unlike the case positivity rate—it looked only at "raw numbers of confirmed cases." Moreover, *Aspirus*' explanation of the case positivity rate factor shows that the Board knew how to develop a COVID-19 outbreak severity metric that looked beyond raw figures, but that it did so separately from and as an alternative to the 14-day case number trend. Starbucks' attempt to backdoor a "non-raw" test into the case number trend factor would render this bifurcated approach superfluous.

Similarly unavailing is Starbucks' complaint with the selection of datapoints the Regional Director used to compare raw figures. The Regional Director examined the new case numbers for two dates: Wednesday, March 2 and Monday, March 14, 2022. (2-ER-237). These dates represented 14 days and 2 days before the Regional

4

Director accessed the data on the Hopkins website, *id.*, and were the nearest reporting dates to either pole of the 14-day window preceding the DD&E. Starbucks argues that the Regional Director should have considered intervening dates within that window. (Starbucks Br. 16, 37–38, 40). But *Aspirus* described only one date that must be considered as a reference point: for "either statistic [measuring outbreak severity], the 14-day period should be measured from the date of the Regional Director's determination, or as close to that date as available data allow." *Aspirus*, 370 NLRB No. 45, slip op. at 5, n.20. By implication, the exercise must compare the "determination" date (or its approximate) to a date 14 days earlier (or its approximate). But how many other dates—if any—within the 14-day window the regional director should consider is not stated. The answer to that question, then, is none. A "trend" over 14 days depends only on how the terminal datapoint compares to the initial datapoint: it either increases, decreases, or stays constant. Whatever peaks or valleys appear between those points does not affect this fundamental relationship. At the very least, tying in case numbers for intermediate dates between the two poles introduces ambiguity into an otherwise clear test. If there are 500 new cases on Day -14, 800 on Day -7, and 600 on Day 0, is the 14-day trend increasing—because of the 100-figure increase relative to the initial date—or decreasing—because of the 200-figure drop from the intermediate to terminal date? It beggars belief that the Board both introduced and resolved this confusion *sub silentio*. *See*

*Lakeside Non-Ferrous Metals, Inc. v. Hanover Ins. Co.*, 172 F.3d 702, 705 (9th Cir. 1999) ("We may not create ambiguity in language where none exists.").

At any rate, *Aspirus* counseled against micromanaging a regional director's decision, acknowledging in the very next sentence of footnote 20 that "some flexibility may be required on this count, particularly with respect to the positivity rate." *Id*. Permitting either party to second-guess a regional director's selection of comparator case number dates flies in the face of the flexibility *Aspirus* afforded that officer in conducting the exercise.

### B. Starbucks was procedurally barred from using post-election objections to relitigate the same issue it raised in its pre-election objections.

There is no dispute that Starbucks' pre- and post-election challenges pertained to the exact same issue: the method of holding the Roastery election. (*Compare* 2-ER-241-64 with 2-ER-299-310). The Board rightly noted that its Rules and Regulations prohibited Starbucks from raising its fully adjudicated pre-election challenge to the method of election in its post-election objections. (NLRB Br. 40) (citing 29 C.F.R. §§ 102.67(g), (i)).

It is worth noting that this principle is established not only in Board regulations but also Board precedent. Election objections which seek to re-litigate matters decided in a direction of election and considered by the Board in a request for review necessarily lack merit. *See Sitka Sound Seafoods, Inc.*, 325 NLRB 685,

686 (1998) (affirming regional director's rejection of employer's objections based on finding that "what the Employer is doing by its objections regarding the seasonal/cyclical issues and the formula is simply relitigating the Direction of Election, as to which review has already been denied"); *Fruehauf Trailer Co.*, 106 NLRB 182, 183–84 (1953) ("Three other objections in substance are further attempts by the Employer to relitigate an appropriate unit issue in the case which the Board fully considered and decided in the Decision and Direction of Election… Because these three objections in reality raise no matters not previously considered and decided by the Board, we hereby adopt the Regional Director's recommendations as to them and hereby overrule all three."). Since Starbucks' post-election objections and request for review sought a second bite at the apple on an issue it already had an opportunity to litigate, the Board appropriately denied review and did not disturb the Regional Director's certification of Workers United as bargaining unit representative.

### C. Starbucks' refusal to bargain with Workers United based on a frivolous, twice-litigated objection to the Union's certification is consistent with its adjudged pattern of delay to avoid its statutory obligations.

As the Board noted, the governing standard for overturning an election and directing a rerun is especially heavy because the process of delay and repetition works to employers' advantage by deferring its bargaining obligation and dissipating union support. (NLRB Br. 18–19, 48–49). That concern is especially applicable here,

7

where multiple administrative law judges have recently held Starbucks unlawfully delayed or refused to bargain in the same union campaign which has given rise to the instant dispute. *See Starbucks Corp.*, 04-CA-294636, 2023 WL 5140070 (Div. of Judges August 10, 2023) (Starbucks violated Section 8(a)(1) and (5) by refusing to bargain over reductions to store operating hours); *Starbucks Corp.*, 22-CA-305726, 2023 WL 4546259 (Div. of Judges July 14, 2023) (Starbucks violated Section 8(a)(1) and (5) by unreasonably delaying in responding to union's information requests meant to prepare for bargaining); *Starbucks Corp.*, 15-CA-290336, 2023 WL 3254440 (Div. of Judges May 4, 2023) (Starbucks violated Section 8(a)(1) through manager's threat that unionization was futile because company would refuse to bargain on terms and conditions of employment); *Starbucks Corp.*, 03-CA-295470, 2023 WL 4363911 (Div. of Judges July 6, 2023) (Starbucks violated Section 8(a)(1) and (5) by refusing to engage in decisional bargaining over store closure).

Starbucks' adjudged proclivity to refuse to bargain with Workers United throughout the country should inform this Court's understanding of its reasons for doing so here. The company's sudden turn as armchair public health expert and professed desire to increase voter turnout cannot mask its true intent: to "wait out" the Roastery partners' desire to bargain a collective bargaining agreement through their democratically selected representative.

## VI. CONCLUSION

For the foregoing reasons, as well as those set forth in the Board's response brief, Workers United respectfully requests the Court enter a judgment enforcing the Board's order in full.

Dated this 16th day of August, 2023.

BARNARD IGLITZIN & LAVITT LLP

By: s/Dmitri Iglitzin
Dmitri Iglitzin, WSBA No. 176738
s/Ben Berger
Ben Berger, WSBA No. 52909
18 W Mercer St, Suite 400
Seattle, WA 98119
(206) 257-6003
(206) 378-4132
iglitzin@workerlaw.com
berger@workerlaw.com

*Attorneys for Workers United*

## CERTIFICATE OF COMPLIANCE

Pursuant to Ninth Circuit Rule 32-1, I certify that the Brief of Intervenor Workers United is proportionally spaced, has a typeface of 14 points or more and contains 1,884 words.

DATED this 16th day of August, 2023.

BARNARD IGLITZIN & LAVITT, LLP

By: s/Ben Berger
Ben Berger, WSBA No. 52909
*Attorney for Workers United*

## STATEMENT OF RELATED CASES

Counsel for Workers United is unaware of any related case as set forth in Circuit Rule 28-2.6 pending before this Court.

DATED this 16th day of August, 2023.

BARNARD IGLITZIN & LAVITT, LLP

By: s/Ben Berger
Ben Berger, WSBA No. 52909
*Attorney for Workers United*

## DECLARATION OF SERVICE

The undersigned declares under penalty of perjury, in accordance with 28 U.S.C. § 1745, that the following is true and correct:

I, Jennifer Fernando, filed the foregoing brief with the Ninth Circuit electronically via the CM/ECF System, which provided notification of such filing to all required parties.

DATED this August 16, 2023, in Federal Way, Washington.

s/Jennifer Fernando
Jennifer Fernando
Paralegal